Ronald A. Nimkoff (RN 4598)
The Nimkoff Firm
Attorneys for Defendants
One Pennsylvania Plaza, Suite 2424
New York, New York 10119
(212) 868-8100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL HARTSTEIN also known as
MOSHE HARTSTEIN,

                    Plaintiff

      -against-


SOLOMON SHARBAT, SOLOMON CAPITAL LLC,
SOLOMON SHARBAT as TRUSTEE FOR SOLOMON
CAPITAL LLC 401 TRUST AND SOLOMON CAPITAL LLC
401 K TRUST,

                    Defendants

09 Civ. 9799 (RMB)

AFFIDAVIT OF
SOLOMON SHARBAT

---

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK  )

      SOLOMON SHARBAT, being duly sworn, deposes and says:

      1. I am a defendant and counterclaimant in this action. I submit this affidavit in

support of defendants-counterclaimants' (one or more of which are hereinafter referred to as

"Defendants") motion for an order (i) vacating the *ex parte* order of attachment that a New York

state court issued on November 12, 2009 (the "*ex parte* order of attachment") before this action

was removed to this Court and (ii) disqualifying E. David Smith from continuing to serve as

counsel for plaintiff Michael Hartstein ("Plaintiff" or "Hartstein") in this action.

The *Ex Parte* Attachment Order Should Be Vacated as
It is Predicated Upon the False Assertion That I Have
Absconded from the United States

2.  I have reviewed the *ex parte* order of attachment, a copy of which is attached as

Exhibit A.  I have also reviewed the papers that Hartstein submitted in support of his application

for the *ex parte* order of attachment, consisting of his affidavit sworn to November 9, 2009

("Hartstein Aff."), a copy of which is attached (with exhibits) as Exhibit B and the affirmation of

his lawyer (and formerly my lawyer *see* ¶¶ 19-25 *infra*),  E. David Smith, dated November 6,

2009, a copy of which is attached as Exhibit C.  Accordingly, I am aware that the *ex parte* order of

attachment is predicated on Hartstein's representation that I moved to Israel and that I "do not

intend to return to the United States."  *See* Hartstein Aff. (Ex. B hereto) at ¶ 6 and the *ex parte*

order of attachment (Ex. A hereto) at 2, which states that it is predicated on "it appearing that the

defendant Solomon Sharbat has fled the jurisdiction and does not intend to return to the United

States"

3.  However, contrary to what Hartstein represented to the state court on an *ex parte* basis

and as explained in further detail below, while I recently visited Israel and family I have there, I

never intended to stay in Israel and I returned home to New York more than one month ago.

Simply stated, I am now and have always been a resident and domiciliary of the State of New

York and I do not plan on re-locating to another state much less another country.  My home is in

Queens (67-34 Kessel Street, Forest Hills) where I was born and raised.  I attended Queens

College in the State of New York.   I have had offices in midtown Manhattan for years from

which I operate all my businesses and companies.  In fact, just this past August, I signed a lease

on behalf of my company, Solomon Capital Advisors LLC, to rent office space at 654 Madison

Avenue through July 2011.  A copy of that lease is attached as Exhibit D.  I have been in that

space for more than five years.  My company, Solomon Capital, LLC,[1] a New York limited

liability company (and named Defendant), also operates out of, and maintains its address at, 654

Madison Avenue.

    4. Thus, any notion that I have fled the jurisdiction or plan to do so is preposterous as I am

a native New Yorker with both roots and future plans here.  Nevertheless, based upon the

unsubstantiated allegation that "I have fled the jurisdiction" hundreds of thousands of dollars

belonging to Defendants have been restrained, paralyzing both me and my businesses financially

and otherwise.  In fact, Hartstein has actually restrained approximately $1 million of Defendants'

money and securities although he is not even seeking half of that amount through this action.

    5. As stated, I reside at 67-34 Kessel Street in Forest Hills. I have resided at that

address for 35 years. While Hartstein claims that I simply picked up and left in October 2009 (*see*

Hartstein Aff.), all sorts of documentation shows otherwise. For instance, my telephone bills,

credit card bills and bank statements for the months October, November and December 2009 were

all delivered to my home in Forest Hills and were not forwarded elsewhere as I never changed or

sought to change my address. Copies of certain of my phone bills, credit card bills and bank

statements for these months that bear my Forest Hills address are attached collectively as Exhibit

E.  A copy of my New York State's driver's license setting forth my Forest Hills address is

attached as Exhibit F.  I also own two automobiles that are insured and maintained in the State of

New York.  Copies of the insurance policies for these vehicles are attached as Exhibit G.

    6. Further, my business cards and the letterhead for Solomon Capital LLC contain

---

[1] I am the owner and President of Solomon Capital LLC.

the Madison Avenue office address, my only office address and Solomon Capital LLC's only office address. *See* copies of my business card and Solomon Capital LLC's letterhead attached collectively as Exhibit H. Also, Solomon Capital LLC was receiving its mail at its Madison Avenue address during October 2009 through December 2009 -- the months that, according to Hartstein, I fled and was "shutting down shop in New York." Copies of certain of Solomon Capital LLC's mail and bills for the aforementioned months, bearing its New York address are attached as Exhibit I.

7. Moreover, I am not an Israeli citizen and I have never taken any steps to become a citizen of Israel or any other country. I am a citizen of the United States and do not have, and have never had, dual citizenship in any other country. I have never leased office space in Israel or any other country (or state, for that matter) and I do not own a home in Israel and have never lived anywhere outside New York City. I maintain a United States passport and I do not have a passport from Israel or any other country aside from the United States.

8. In fact, by the time I learned of the *ex parte* attachment order and the papers underlying it, I had already returned to New York. Upon providing the attachment papers to my attorneys, they, among other things, promptly pointed out to this Court that the state court's *ex parte* order of attachment was predicated on the notion that I had "fled the jurisdiction" and "did not intend to return to the United States." *See* the *ex parte* order of attachment (Ex. A hereto) at 2, and the letter from my attorneys to this Court dated December 2, 2009 (a copy of which is attached as Exhibit J).

9. Then, after learning from my counsel's letter (Ex. J) that I had returned to New York (in fact, I was in court on December 9, 2009 for a pre-motion conference before Hon. Richard M.

4

Berman), Hartstein was forced to switch gears. He abandoned the argument that the *ex parte*

order of attachment was proper because I had fled the country and then revised his position to

argue that I only returned to New York because my accounts were restrained. *See* Hartstein's

attorney's letter to this Court dated December 7, 2009, a copy of which is attached as Exhibit K.

However, the documentation attached hereto conclusively establishes that Hartstein is wrong.

Specifically, my receipt for the purchase of my airplane ticket back to New York shows that I

booked my return flight on November 8, 2009. The copy of the receipt from the carrier, El Al, is

attached as Exhibit L. Also, a copy of my credit card statement showing that I booked and paid

for my return flight to New York on November 8, 2009 is attached as Exhibit M. Given that the

*ex parte* order of attachment was not even signed until November 12, 2009, it is just plain silly for

Hartstein to continue to argue that the only reason I returned home to New York was because my

accounts were restrained. As all the documentation reflects, I was all set to return home to New

York well in advance of learning about the restraints on Defendants' accounts. In fact, I first

learned that Defendants' accounts had been restrained when, during the afternoon of November

16, 2009, I went into a TD Bank branch in midtown Manhattan and was unable to withdraw some

spending money as a result of the *ex parte* attachment.

10. Aside from the fact that I am here in New York (and fully intend to attend the oral

argument on this motion scheduled for December 23, 2009), there is other unequivocal

evidence that I did not flee the jurisdiction or seek to divert assets from it. Specifically, after

Hartstein threatened to sue me (on October 16, 2009, he sent to me an email, a copy of which is

attached as Exhibit N, containing an unsigned complaint which he indicated would be executed

and filed), all of Defendants' bank accounts and brokerage accounts, containing (in the aggregate

and separately) hundreds of thousands dollars, remained fully funded. *See* the notice from TD Bank dated November 17, 2009 (a copy of which is attached as Exhibit O), reflecting that, as of that date, the account in the name Solomon Sharbat bearing account number ▮▮▮409 contained $208,175.17. That entire account balance is currently restrained. *Id.* *See also* the notice from TD Bank dated November 17, 2009 (a copy of which is attached as Exhibit P), reflecting that, as of that date, the account in the name Solomon Capital 401 K Trust (account number ▮▮▮22) contained $191,824.83. That entire account balance is also currently restrained. Similarly, after learning that Hartstein intended to file a lawsuit against me, I did not liquidate or divert assets from the account maintained with Blue Trading Group in the name of Solomon Capital LLC (account number ▮▮▮60). That account has a value amounting to $177,676.29 and is also presently restrained. *See* the statement from Blue Trading Group (a copy of which is attached as Exhibit Q), and a second account maintained with Blue Trading Group in the name Solomon Capital 401 K (account number ▮▮▮106) was not liquidated following notice of Hartstein's lawsuit. It has a value amounting to $133,822.60, and it is also currently restrained. *Id.* And, as of November 2009, the brokerage account in the name Solomon Capital LLC maintained with Jessup Lamont (account number ▮▮▮5478) had a value of approximately $158,008.45. *See* statement from Jessup Lamont, Ex. R. That entire account has been restrained. Also, as of November 2009, the brokerage account in the name Solomon Capital 401 K maintained with Jessup Lamont (account number ▮▮▮0863) had a value of approximately $335,884.32. *Id.* That account has been restrained. Thus, it is quite clear that, even after learning of Hartstein's lawsuit, I did not shut down these accounts or transfer their holdings. They all remained fully capitalized and here in New York where the other Defendants and I do business

and live.

11.  Given the mountain of evidence demonstrating that I live in New York, have

always lived in New York and intend to remain in New York and the complete vacuum of any

evidence even suggesting that I have transferred any assets, or am about to transfer any assets,

outside of New York in order to defeat the rights of any creditors, it seems silly for Hartstein to

continue to rely on an ill-worded email (that I am embarrassed to have this Court review given its

salty language) where, in "blowing off steam" as a result of certain business frustrations, I

fantasized about leaving my troubles behind in New York and remaining abroad.  But, that email

is dated October 7, 2009 (*see* Hartstein Aff., Ex. B hereto) and, although Hartstein argued that it

showed that I am about to transfer assets, the reality is that, as of November 17, 2009 (well more

than one month after that email), Defendants and I still maintained our bank accounts and

brokerage accounts (containing hundreds of thousands of dollars in funds and securities) in the

State of New York.  In fact, even after my TD Bank account bearing number ████2022 was

restrained, I continued to make deposits into it, *see* TD Bank statement (a copy of which is

attached as Exhibit S), reflecting that on December 1, 2009, after I learned about the restraint, I

deposited $ 140, 195.82 into the account.  I am just ***not*** in the process of re-establishing or moving

Defendants' New York based accounts or their contents, nor do I plan to do so.[2]

---

[2]  Indeed, the lion's share of Solomon Capital LLC's business dealings and prospects are New York based, hence it is located here. On a personal level, I have lived here my whole life, my siblings and nieces and nephews with whom I am very close live here too. I am an active and dues paying member of the Sephardic Congregation of Queens and attend religious services there. Hence, both personally and professionally, Defendants are integrally connected to New York and are not about to liquidate or transfer all of their assets out of New York or flee the jurisdiction in any manner. Rather, Defendants are prepared to defend this action and vigorously prosecute their counterclaims, which exceed the amount demanded in the complaint. A copy of Defendants'

12. As the *ex parte* order of attachment was predicated on Hartstein's demonstrably false assertion of fact that I have fled the jurisdiction and, concomitantly, am about to divert assets outside the jurisdiction, it should be vacated immediately. Defendants are suffering grave financial injury under the *ex parte* order of attachment, which never should have been issued in the first place. Among other things, Defendants have not been able to invest in lucrative business ventures or to take part in profitable investment opportunities. Defendants' reputations are being harmed as they cannot honor commitments and pursue various deals. Further, Defendants cannot effect transactions within their brokerage account at Jessup Lamont due to the restraint.

13. Moreover, my attorneys have advised me that, to be entitled to an order of attachment, Hartstein must show a likelihood of success on the merits. Here, Hartstein cannot do so. The gravamen of the complaint is that I owe money to Hartstein for a $205,000 loan that he allegedly made to me. *See* complaint, Ex. 1 to the Hartstein Aff, which is attached as Exhibit B hereto. However, as that loan was usurious when made containing an oppressive interest rate, plaintiff is not entitled to re-payment of either principal or interest. *See* Defendants' accompanying memorandum of law dated December 15, 2009 ("Defendants' Brief") at 10-12. More specifically, according to the complaint and the promissory note- (which is attached to the complaint as Exhibits A), a $205,000 loan was made to me in my personal capacity with repayment due in 13 days. [3] As consideration for the loan, Hartstein charged $20,000 in interest plus other valuable consideration in the form of shares of stock. But even without taking the value of the stock into

---

answer and counterclaims are attached as Exhibit T.

[3] The complaint sets forth that the loan was made to me "personally." *See* the complaint, Exhibit 1 to the Hartstein Aff. (which is attached as Exhibit B hereto) at ¶¶ 10 an13. Hartstein further contends that I used Solomon Capital LLC to funnel the money through to myself in an attempt to

consideration, the $20,000 interest payment alone on the $205,000 loan for 13 days amounted to an annual interest rate of 273.92%– well above the maximum interest rate of 16% permitted under New York law. *See* Defendants' Brief at 10-11.

14. While the promissory note charges no interest on its face, the document that I was compelled to execute simultaneously with the promissory note (Exhibit B to the complaint, which is Exhibit 1 to the Hartstein Aff.) recites an "acknowledgment" that $20,000 is owed to Hartstein as well as 600,000 unrestricted shares of SpongeTech supposedly in connection with "previous transactions." Notwithstanding the "previous transactions" verbiage, the $20,000 and the shares of SpongeTech really served as interest for the $205,000 loan. Tellingly, Hartstein expressly stated and acknowledged as much. In an email dated September 29, 2009, Hartstein admits that the $20,000 represents the interest charge on the loan. *See* Hartstein's email dated September 29, 2009, stating "here is a list of everything you owe me. . . *$205,000 + $20,000 interest.*" A copy of Hartstein's September 29, 2009 email is attached as Exhibit D to my attorney's letter to this Court dated December 2, 2009, a copy of my attorney's December 2 letter to this Court is in turn attached hereto as Exhibit J. In his email to me dated September 30, 2009, Hartstein again acknowledged that the $205,000 loan included an excessive and illegal interest rate. He stated "*8/28/09 I sent you 2 wires for a total of 205k this had a $20,000 Interest payment and agreement for 40,000 SPNG* [SpongeTech] Shares. *See* Hartstein's September 30, 2009 email at 2, attached as Ex. E to my attorney's December 2 letter to this Court which in turn is attached hereto as Exhibit J.

15. In addition, Hartstein seeks to "recover" money damages, for 640,000 shares that I

---

avoid personal liability for the loan. *Id.* at ¶ 19.

allegedly failed to deliver to him, *see* the complaint (Ex. 1 to the Hartstein Aff.) at 6, but in actuality those shares represent a portion of the aforementioned usurious interest, which is not recoverable. *See also* Defendants' Brief at 10-11.

16. As for Hartstein's claim that Solomon Capital LLC 401 K Trust has violated provisions of ERISA, even if this were true, Hartstein is not in a position to assert and recover on this claim. He is not now and never has been a participant in the 401 K plan, which as I currently understand it, is a prerequisite to maintaining an ERISA claim in federal action. *See* Defendants' Brief at 13.

17. Finally, Defendants' remaining claim for $50,000 on supposed loans he made to me, is not recoverable, as even if these loans were legitimate and lawful, Hartstein owes to me money well in excess of $50,000. At minimum, these loans have been offset by monies due and owing from Hartstein to me.

18. More specifically, I have asserted counterclaims against Hartstein seeking money damages in excess of the amount demanded by Hartstein through his complaint. *See* Defendants' answer and counterclaim. As explained in detail in the attached counterclaims (Ex. T hereto), among other things, Hartstein served as, among other things, my investment advisor and he breached his fiduciary duties to me and defrauded me out of money by, among other things, effecting unauthorized trades with my securities thereby causing me to suffer damages in excess of $128,000. *Id.* at 6-11. He also converted my funds to himself, causing me to suffer damages over and above $75,000. *Id.* at 11-13. Also, Hartstein and I partnered on a business deal and agreed to equally split the profits generated in connection with the venture. *Id.* at 13-15. Hartstein however, breached that agreement causing me to suffer damages in the amount of at least

$244,000. In fact, through my counterclaims (all of which are attached- I have not recited each count herein) I am seeking, and am entitled to, $837,000 in compensatory damages, with additional sums to be determined at trial, and $1,000,000 in punitive damages.

**Smith Should Be Disqualified as He Elicited Privileged and Confidential**
<u>Information From Me Pertaining to This Case, in His Capacity as My Attorney</u>

19. Plaintiff's attorney E. David Smith ("Smith") recently had attorney-client communications and an attorney-client relationship with Solomon Capital LLC and me. A fully executed retainer agreement (signed by Smith and Solomon Capital LLC and me in my individual capacity), dated October 2, 2009 is attached as Exhibit U. Smith and I communicated on matters directly related to this action.

20. As the executed retainer agreement (Ex. U) reflects, Smith and I had numerous communications before we executed the retainer agreement as it states "[i]t was a pleasure speaking with you about the referenced matter." *Id.* Also, Smith and I exchanged numerous emails before we signed the retainer.

21. As the retainer agreement also reflects, Smith undertook to represent me in a matter we called "Marcus S. Butler, MSB Group Inc. (NJ) and other entities" (referred to herein as the "Butler Matter"). *Id.* As my counterclaims demonstrate, my dispute with Butler and MSB Group Inc. directly relate to claims and issues in this action. *See* answer and counterclaims, Exhibit T at ¶¶ 35-39, 44-49, 56 107. In fact, among other things, Smith and I discussed, in the context of our attorney-client relationship, the circumstances surrounding Hartstein's charging me $75,000 in connection with the Butler Matter. I am seeking to recover that $75,000 in this action. *See* my counterclaims at ¶¶ 61-67, 1-67, Ex. T.

11

22.    To be clear, I provided confidential and privileged information to Smith.[4]  Among other things, I forwarded to Smith an email dated September 27, 2009 that I had sent to my prior attorneys David Ferber and Robert Schechter for the purpose of receiving legal assistance in connection with the Butler Matter.

23.    After eliciting privileged and confidential information from me, Smith told me that he could not represent me because Hartstein is his longstanding client. Smith also indicated to me that if I would just capitulate to Hartstein's monetary demands (now, asserted in this lawsuit), then he (Smith) could continue to represent me in the related action. Smith counseled me to succumb to Hartstein's requests. I indicated to Smith that I was confused and that I thought he was my attorney. *See* emails memorializing this exchange attached together as Ex. V.  After I expressed such confusion, Smith continued dealing with him, but more and more it became unclear to me whether he was fulfilling hid duty to protect my interests.

24.    When listening to Smith speak at the pre-motion conference before the Hon. Richard Berman on December 9, 2009, it seemed to me that he now takes the position that he rightfully obtained information from me in his capacity as *Hartstein's lawyer* and therefore he can use that information against me and need not be disqualified.  A copy of the transcript from the proceeding is attached as Exhibit W.  However, among other things, Smith acquired privileged and confidential information from me and we had numerous attorney-client communications before he ever mentioned any notion of conflict.

25.    Smith is not only in a position to use against me information that he garnered in the

---

4 I have been advised by my current counsel that I should not disclose the content of any disclosures made to Smith in the context of our attorney-client relationship.

context of our attorney-client relationship, but he has already done so.  I disclosed to Smith the locations at which Defendants maintain their bank and brokerage accounts and he used this information against me by attaching the funds and securities that Defendants maintain in those accounts.

26.    Having discussed all of the foregoing matters with Smith in the context if our attorney client relationship, it would be grossly unfair for Smith to be able to continue to use my own words against me as Plaintiffs lawyer in this action. Smith should therefore, be disqualified as Plaintiff's counsel.

**WHEREFORE,** for the foregoing reasons and the reasons set forth in Defendants' Brief, I respectfully request that this Court grant Defendants' motion to vacate the *ex parte* order of attachment and to disqualify Smith from continuing to represent Plaintiff in this action.

_____
Solomon Sharbat

Sworn to before me
December 15, 2009

_____
Notary Public

RONALD A. NIMKOFF
Notary Public, State of New York
No. 02NI4814409
Qualified in Nassau County
Commission Expires Oct. 31, 2010