E. David Smith
SMITH & ASSOCIATES
570 Lexington Avenue, 23rd Floor
New York, New York 10022
Tel. 212-661-7010

Attorney for Plaintiff Michael Hartstein

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
MICHAEL HARTSTEIN                                                  No. 09-CIV-09799
                Plaintiff

v.                                                                 AFFIDAVIT OF
                                                           MICHAEL HARTSTEIN
SOLOMON SHARBAT, SOLOMON CAPITAL LLC.
SOLOMON SHARBAT AS TRUSTEE FOR SOLOMON
CAPITAL LLC. 401 K TRUST AND SOLOMON CAPITAL
LLC 401 K TRUST
                Defendants
-----------------------------------------------------------------X

Michael Hartstein makes this affidavit under the pains and penalties of perjury and says:

1. I am the plaintiff in this matter and as such have personal knowledge of the facts herein set forth.

2. Defendant Solomon Sharbat is in the business of obtaining large blocks of low priced shares of stock and selling them to investors. I was one of defendant's customers and I purchased from him a block of 600,000 shares of SpongeTech Delivery Systems, Inc.

3. On information and belief at the time I made the purchase from the Defendant Solomon Sharbat said Defendant did not yet own the shares.

4. On information and belief, Defendant Solomon Sharbat at the same time sold blocks of SpongeTech Delivery Systems, Inc. to other investors when he also did not own it.

5. Defendant Solomon Sharbat represented to me that he needed to borrow money in order to be able to cover his sales and other personal obligations and if I would loan him the money he would be able to cover his sales, earn sufficient money to repay the loans and deliver my shares in SpongeTech Delivery Systems, Inc.

6. On different occasions in July, August and September 2009 I made loans to Defendant Solomon Sharbat personally at his request totaling $275,000.00. Said loans were in the amounts of $205,000.00, $20,000.00, $38,000.00 and $12,000.00 respectively. All the transactions are documented in wires and there is more than a reasonable probability of my success on the merits. **(Exhibit A)**

7. At Defendant Solomon Sharbat's direction the moneys for said loans were wired or delivered to Defendant Solomon Capital LLC and Defendant Solomon Capital LLC 401 (K) Trust.

8. I pressed defendant to give me acknowledgements of said obligations and a date when said loans would be paid off. Defendant in response to said requests delivered to me on August 28, 2009 a promissory note in the amount of $205,000.00, a copy of which is attached to the complaint as "Exhibit 2" and a document entitled "Acknowledgement" a copy of which is attached to the complaint as "Exhibit 3". Sharbat by email dated

August 28, 2009, that the obligations in the Acknowledgment were separate obligations. **(Exhibit B)**

9. Defendant acknowledged that said loans were his personal obligations to me by e-mail of October 7, 2009 which is part of "Exhibit 1" attached to the complaint.

10. On information and belief Defendant borrowed said funds from me to cover some stock trades in the shares of Bioelectronics Corporation and SpongeTech Delivery Systems, Inc. that he failed to deliver to his customers.

11. Among the shares that Defendant failed to deliver were the aforementioned 600,000 shares of SpongeTech Delivery Systems, Inc. and an additional 40,000 shares belonging to me. Defendant promised to deliver 600,000 of said shares to I by September 10, 2009 as set forth in the "Acknowledgement" "Exhibit 3" attached to the complaint.

12. Defendant never delivered the said shares and failed to pay when due the monies promised. On September 10, 2009 the value of the 600,000 SpongeTech Delivery Systems, Inc. shares was $84,000.00. At the present time there is no market for said shares and they are basically valueless.

13. Based upon his e-mails it was and is my belief, Defendant failed to to use the money he borrowed from me to cover his stock trades and simply took money and left the country.

14. On information and belief, Defendant Solomon Sharbat embarked upon a scheme or plan to defraud me by convincing me to "loan" him money to enable him to complete delivery of shares out of which defendant would get commissions out of which he would be able to repay the loan.

15. Based upon e-mails from the Defendant to me, I believed that the Defendant Solomon Sharbat took all of the money out of the accounts of Solomon Capital LLC and left the country. (See e-mail of October 7, 2009 contained in "Exhibit 1" in which Defendant states: "I'm toast. I don't know if I will ever come back to the states I'm sorry.")

16. On information and belief, based upon the fact that Defendant had me wire some of the loaned money into the Solomon Capital LLC. 401 (K) Trust that the Defendant utilized the said Trust as his alter-ego.

17. I have read defendants' counterclaims in this case and my answers to them are as follows. There are basically three claims that defendants make:

    a. Unauthorized sale of Spongetech stock. This claim is so far off base that it is difficult to answer. These shares were purchased with plaintiff's money under an agreement that they would be sold at a profit and I would keep 10% of the gross and the balance would be given to the defendants. The balance was given to the defendants (except for $75,000.00 which will be explained in paragraph b.) as is shown by the attached wire transfer copies.

    b. Unauthorized retention of $75,000.00. This was not any type of fee for services but a portion of the $250,000 that I paid to the

defendant on July 20, 2009 for five million shares of Spongetech stock which the defendants failed to deliver and they agreed that the deal would be cancelled and I would be given my money back. The money should have been given back in July, but only a part of it was given back and in August when the transaction described in paragraph a above involving another (supposedly) five million shares of Spongetech stock was consummated. Instead of transferring the entire balance on the transaction to defendants, I retained the $75,000.00 that was still owed on the $250,000 that was supposed to be repaid in July when the parties decided to cancel the sale because the defendants did not deliver the shares.

    c. The transaction involving MSB GROUP INCORPORATED which was supposedly closed on August 24, 2009. Defendants claim is so far from the truth that it is believed to have come from Alice in Wonderland. Attached is a copy of the Delaware Secretary of State records showing that MSB GROUP, INCORPORATED was not even incorporated until August 28, 2009 and the money came not from defendants but from Barry Honig and defendants had nothing to do with this transaction. **(Exhibit C)** I have no interest in MSB Group Incorporated, the New Jersey corporation owned by Marcus Butler referred to in the defendants' counterclaims.

18. I never breached any duty to the defendant as he alleges in the counterclaims. His e-mails and conversations with me never raised

questions of any misconduct on my part. These counterclaims have no iota of truth to the m and I never knew anything about these claims until I read them in his counterclaims.

19. At the time the motion to attach was made I honestly believed that there was no counterclaim that he could possibly legitimately have against me.

Dated: New York, New York
December 22, 2009

_____
Moishe Hartstein

Affirmed before me under the
Pains and penalties of perjury this 22nd day of
December, 2009

_____
Notary Public

NICHOLAS MEYER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01ME6140915
QUALIFIED IN ROCKLAND COUNTY
MY COMMISSION EXPIRES FEB. 13, 2010